Patrick J. Reilly, Esq.
Nevada Bar No. 6103
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614
Telephone:  702.382.2101
Facsimile:  702.382.8135
preilly@bhfs.com

*Attorneys for Aargon Agency, Inc., Allied Collection Services, Inc.,
Business and Professional Collection Service, Inc., Clark County
Collection Service, LLC, Collection Service of Nevada, PlusFour,
Inc., Donna Armenta, Donna Armenta Law, and the
Nevada Collectors Association*

David Israel, Esq. *(pro hac vice forthcoming)*
SESSIONS ISRAEL & SHARTLE
3850 N. Causeway Boulevard, Suite 200
Metairie, LA 70002-7227
Telephone: (504) 846-7900
Facsimile: (504) 828-3737
disrael@sessions.legal

James K. Schultz, Esq.
Nevada Bar No. 10219
Brittany L. Shaw, Esq. (*pro hac vice forthcoming*)
SESSIONS ISRAEL & SHARTLE
1545 Hotel Circle South, Suite 150
San Diego, CA 92108-3426
Telephone: (619) 758-1891
Facsimile: (877) 334-0661
jschultz@sessions.legal
bshaw@sessions.legal

*Attorneys for ACA International, AssetCare, LLC,
Capio Partners, LLC, CF Medical, LLC,
RM Galicia d/b/a Progressive Management LLC, and
The Law Offices of Mitchell D. Bluhm and Associates,
LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| AARGON AGENCY, INC., a Nevada corporation; ACA INTERNATIONAL, a Minnesota non-profit corporation; ALLIED COLLECTION SERVICES, INC., a Nevada corporation; ASSETCARE, LLC, a Texas limited liability company; BUSINESS AND PROFESSIONAL COLLECTION SERVICE, INC., a Nevada | Case No.: |
| | **COMPLAINT** |

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

1

22811905.1

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

corporation; CAPIO PARTNERS, LLC, a Texas limited liability company; CF MEDICAL, LLC, a Nevada limited liability company; CLARK COUNTY COLLECTION SERVICE, LLC, a Nevada limited-liability company; COLLECTION SERVICE OF NEVADA, a Nevada corporation; DONNA ARMENTA, an individual; DONNA ARMENTA LAW, a Nevada law firm; NEVADA COLLECTORS ASSOCIATION, a Nevada non-profit corporation; PLUSFOUR, INC., a Nevada corporation; RM GALICIA d/b/a PROGRESSIVE MANAGEMENT, LLC, a Nevada limited-liability company; and THE LAW OFFICES OF MITCHELL D. BLUHM & ASSOCIATES, LLC, a Georgia limited liability company,

Plaintiffs,

v.

SANDY O'LAUGHLIN, in her capacity as Commissioner of State Of Nevada Department Of Business And Industry Financial Institutions Division,

Defendant.

Plaintiffs Aargon Agency, Inc. ("Aargon"), Allied Collection Services, Inc. ("Allied"), Business and Professional Collection Service, Inc. ("BPCS"), Clark County Collection Service, LLC ("CCCS"), PlusFour, Inc. ("PlusFour"), Donna Armenta ("Ms. Armenta"), Donna Armenta Law ("Armenta Law"), and Nevada Collectors Association ("NCA") (collectively, the "Nevada Plaintiffs"), by and through their counsel of record, the law firm of Brownstein Hyatt Farber Schreck, LLP, and Plaintiffs ACA International ("ACA"), AssetCare, LLC ("AssetCare"), Capio Partners, LLC ("Capio"), CF Medical, LLC ("CF Medical"), RM Galicia d/b/a Progressive Management, LLC ("Progressive"), and The Law Offices of Mitchell D. Bluhm & Associates, LLC ("MBA") (collectively, the "Out of State Plaintiffs"), by and through their counsel of record, the law firm of Sessions, Israel, and Shartle LLC, hereby allege and complain as follows:

/ / /

2

22811905.1

**INTRODUCTION**

1.      This action seeks injunctive and other relief relating to a statute enacted by the Nevada Legislature and signed into law on June 2, 2021 as Senate Bill ("S.B.") 248. S.B. 248 is set to go into effect on July 1, 2021.

2.      Among other defects, S.B. 248 is in direct conflict with the Fair Debt Collection Practices Act (the "FDCPA"), the Fair Credit Reporting Act (the "FCRA"), and NRS § 649.332, and a debt collector must violate S.B. 248 to comply with these three statutes.

3.      S.B. 248 violates the First Amendment, Fourteenth Amendment, and the Supremacy Clause of the United States Constitution, as well as the preemption rules enacted under the FDCPA and the FCRA.

4.      As a result, S.B. 248 is unenforceable, unconstitutional, and preempted by federal law. If S.B. 248 becomes effective, Plaintiffs will be irreparably harmed by being forced to attempt and comply with S.B. 248 and, in so doing, violate federal law.

**PARTIES, JURISDICTION AND VENUE**

5.      Aargon is an entity created pursuant to the laws of the State of Nevada and is a "collection agency" licensed and regulated under NRS Chapter 649. As part of its duties as a licensed debt collector, Aargon engages in consumer debt collection and credit reporting on behalf of its clients, and therefore is a "debt collector" subject to the requirements of the FDCPA and a "furnisher of information" subject to the requirements of the FCRA.

6.      ACA is a non-profit corporation organized and existing under the laws of the State of Minnesota.

7.      NCA is a non-profit cooperative corporation organized and existing under the law s of the State of Nevada.

8.      Many of the members of ACA and NCA are "collection agencies" as defined under NRS Chapter 649 and thus are subject to its regulation. Other members are attorneys licensed to practice law in the State of Nevada or law firms regulated by the State Bar of Nevada. ACA and NCA members engage in debt collection as described in this Complaint. ACA and NCA have

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

3

22811905.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

representational standing in this action on behalf of their respective members, in accordance with *Warth v. Seldin*, 422 U.S. 490 (1975), and its progeny.

9. Allied is an entity created pursuant to the laws of the State of Nevada and is a "collection agency" licensed and regulated under NRS Chapter 649. As part of its duties as a licensed debt collector, Allied engages in consumer debt collection and credit reporting on behalf of its clients, and therefore is a "debt collector" subject to the requirements of the FDCPA and a "furnisher of information" subject to the requirements of the FCRA.

10. AssetCare is a foreign entity pursuant to the laws of the State of Nevada and is a "collection agency" licensed and regulated under NRS Chapter 649. As part of its duties as a licensed debt collector, AssetCare engages in consumer debt collection and credit reporting on behalf of its clients, and therefore is a "debt collector" subject to the requirements of the FDCPA and a "furnisher of information" subjection to the requirements of the FCRA.

11. BPCS is an entity created pursuant to the laws of the State of Nevada and is a "collection agency" licensed and regulated under NRS Chapter 649. As part of its duties as a licensed debt collector, BPCS engages in consumer debt collection and credit reporting on behalf of its clients, and therefore is a "debt collector" subject to the requirements of the FDCPA and a "furnisher of information" subject to the requirements of the FCRA.

12. Capio is a foreign entity pursuant to the laws of the State of Texas and is a "collection agency" licensed and regulated under NRS Chapter 649. As part of its duties as a licensed debt collector, Capio engages in consumer debt collection and credit reporting on behalf of its clients, and therefore is a "debt collector" subject to the requirements of the FDCPA and a "furnisher of information" subject to the requirements of the FCRA.

13. CF Medical is a foreign entity pursuant to the laws of the State of Nevada and is a "collection agency" licensed and regulated under NRS Chapter 649. As part of its duties as a passive debt buyer, CF Medical engages debt collectors to face with consumers and collect debt owned by CF Medical; therefore, the debt collectors hired by CF Medical are "debt collectors" subject to the requirements of the FDCPA and are "furnishers of information" subject to the requirements of the FCRA.

4

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

14.     CCCS is an entity created pursuant to the laws of the State of Nevada and is a "collection agency" licensed and regulated under NRS Chapter 649.  As part of its duties as a licensed debt collector, CCCS engages in consumer debt collection and credit reporting on behalf of its clients, and therefore is a "debt collector" subject to the requirements of the FDCPA and a "furnisher of information" subject to the requirements of the FCRA.

15.     CSN is an entity created pursuant to the laws of the State of Nevada and is a "collection agency" licensed and regulated under NRS Chapter 649.  As part of its duties as a licensed debt collector, CSN engages in consumer debt collection and credit reporting on behalf of its clients, and therefore is a "debt collector" subject to the requirements of the FDCPA and a "furnisher of information" subject to the requirements of the FCRA.

16.     PlusFour is an entity created pursuant to the laws of the State of Nevada and is a "collection agency" licensed and regulated under NRS Chapter 649.  As part of its duties as a licensed debt collector, PlusFour engages in consumer debt collection and credit reporting on behalf of its clients, and therefore is a "debt collector" subject to the requirements of the FDCPA and a "furnisher of information" subject to the requirements of the FCRA.

17.     Progressive is an entity created pursuant to the laws of the State of Nevada and is a "collection agency" licensed and regulated under NRS Chapter 649.  As part of its duties as a licensed debt collector, Progressive engages in consumer debt collection and credit reporting on behalf of its clients, and therefore is a "debt collector" subject to the requirements of the FDCPA and a "furnisher of information" subject to the requirements of the FCRA.

18.     MBA is a foreign entity pursuant to the laws of the State of Georgia and is a "collection agency" licensed and regulated under NRS Chapter 649.  As part of its duties as a licensed debt collector, MBA engages in consumer debt collection and credit reporting on behalf of its clients, and therefore is a "debt collector" subject to the requirements of the FDCPA and a "furnisher of information" subjects to the requirements of the FCRA.

19.     Except for the ACA, and NCA (industry trade groups), CF Medical (a passive debt buyer), MBA, and AssetCare (collecting only on behalf of a passive debt buyer), each of the foregoing debt collectors engage in the collection of unpaid delinquent medical debt on behalf of

5

22811905.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

medical service providers, which includes physicians, health care providers, and providers of emergency services. Generally, their arrangements with those medical providers are structured on a contingency basis. In other words, for unpaid delinquent accounts sent to collection, these medical providers do not get paid unless their debt collectors are successful in recovering said accounts.

20. Donna Armenta ("Ms. Armenta") is an individual and resident of the State of Nevada. Ms. Armenta is an attorney licensed to practice law in the State of Nevada, and her law practice is primarily in the area of consumer debt collection and is therefore subject to the FDCPA.

21. Donna Armenta Law ("Armenta Law") is a Nevada law firm located in Clark County, Nevada. Its practice is primarily in the area of consumer debt collection and is therefore subject to the FDCPA.

22. Ms. Armenta and Armenta Law also represent medical providers and debt collectors on a contingency basis, and do not get paid unless and until (a) the court awards a fee to the client as a prevailing party; and (2) that judgment is actually collected.

23. In turn, many of the clients of Aargon, Allied, BPCS, Capio, CCCS, CSN, PlusFour, Progressive, Ms. Armenta, and Armenta Law are medical service providers, including doctors, specialists, medical offices, and hospitals. These providers retain licensed Nevada debt collectors and attorneys for their unpaid delinquent accounts, under an arrangement in which they do not get paid unless the debt collector and/or attorney is successful in collecting the unpaid debt. These medical service providers, providing medical services to the public, do not possess the skill, knowledge, infrastructure, resources or expertise to engage in debt collection on their own behalf, and would be unable to collect unpaid delinquent debts if they were not able to engage the services of a licensed debt collector or attorney. CF Medical purchases debt from medical service providers. MBA and AssetCare collect on behalf of CF Medical.

24. In addition, many unpaid medical debts are incurred by out of state residents who seek medical treatment while they are traveling to the State of Nevada. Medical service providers are particularly ill-equipped to collect these out-of-state debts. Said debts are serviced and collected by the collection agency plaintiffs.

6

22811905.1

25. Defendant Sandy O'Laughlin (the "Commissioner") is the Commissioner of the State of Nevada Department of Business and Industry Financial Institutions Division (the "FID").

26. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, which provides for original jurisdiction of this Court in suits that arise under the Constitution, laws, or treaties of the United States.

27. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (2), and (3). Defendant resides in this District, performs her official duties in this District and a substantial part of the events or omissions giving rise to this action occurred or will occur in this District.

### GENERAL ALLEGATIONS

**A.      Enactment of S.B. 248 in the 81st Session of the Nevada Legislature.**

28. In 2021, the Nevada Legislature enacted Senate Bill ("S.B.") 248. The bill was signed into law on June 2, 2021.

29. S.B. 248 erects artificial barriers to the collection of lawful medical debt and was designed specifically to prevent physicians, health care providers, and providers of emergency services from using licensed debt collection companies to secure payment for lawful debts arising from the provision of their medical goods and services to the public.

30. The stated purpose of S.B. 248 on its introduction was to provide relief to consumers during the COVID-19 pandemic; however, its requirements were made permanent without explanation or rational basis. Further, Nevada fully reopened to 100% capacity on June 1, 2021, demonstrating no further need for COVID-19 pandemic relief.

31. S.B. 248 amends NRS Chapter 649 and therefore places its provisions under the auspices of the Commissioner, who is empowered to enforce S.B. 248 under Chapter 649.

32. The Commissioner is empowered to enforce NRS Chapter 649, which includes the power to license, regulate, and discipline those who are subject to its rules. The Commissioner's disciplinary authority includes the ability to issue cease and desist orders, suspend and revoke licenses (without or without notice), impose administrative fines, and seek injunctive relief.

33. S.B. 248 becomes effective on July 1, 2021.

///

7

22811905.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**B.    S.B. 248 Is Impermissibly and Unconstitutionally Vague.**

34.    S.B. 248 fails to define numerous key terms, making it unconstitutionally vague.

35.    Specifically, Section 7, forbids collection agencies from "taking any action to collect a medical debt" for sixty (60) days after first sending a required notice to a medical debtor ("Section 7 Notice"). However, Section 7 of S.B. 248 does not define the phrase "action to collect a medical debt." It is unclear whether the term "action" means the commencement of a civil action or to certain collection "activity." Section 7 further fails to define what activities would be considered an "action to collect a medical debt" if the term were to encompass more than the commencement of a civil action.

36.    Section 7 of S.B. 248 is also silent as to what a debt collector may or may not do when a certified or registered letter is returned undelivered, or when a debtor refuses delivery, as there is no statutory instruction on how to comply with the requirement.

37.    In addition, Section 7.5 allows a collection agency to accept a voluntary payment from a medical debtor under certain circumstances, but fails to address whether a voluntary payment may be accepted from a third person acting on behalf of a medical debtor, such as an insurance company, a representative, a trustee, an executor, or even a family member.

38.    Section 7.5 requires a debt collector, when accepting a payment, to disclose that (a) "a payment is not demanded or due"; and (b) the medical debt will not be reported to a credit reporting agency for a period of sixty days. Yet, Section 7.5 does not state whether this requirement applies when a voluntary payment is made by mail, with the debt collector having no opportunity to make the required disclosure under such circumstances.

39.    Section 7.5 is also inconsistent with Section 7. Specifically, in the Section 7 Notice, debt collectors are required to identify the medical provider that provided the goods or services "for which the medical debt is owed." In contrast, Section 7.5 requires debt collectors to state that the debt "is not demanded or due." These requirements contradict each other and require debt collectors to make inconsistent representations to debtors.

40.    Though NRS Chapter 649 exempts attorneys from its requirements, Section 8 of S.B. 248 not only applies to collection agencies, it also applies to their "agents." Nevada law holds

8

22811905.1

that attorneys are "agents" of their clients. As such, S.B. 248 is impermissibly vague as to whether S.B. 248 applies to attorneys representing collection agencies and whether attorneys such as Ms. Armenta and Armenta Law are now subject to licensing by the Commissioner, and potentially subject to civil suit if they choose to ignore S.B. 248.

41.     S.B. 248 is silent as to whether its requirements apply to medical debts that were already being serviced by collection agencies before July 1, 2021, the effective date of the law. Plaintiffs cannot determine whether S.B. 248 regulates those accounts, including accounts for which debtors have agreed to payment plans or have otherwise been communicating with collection agencies.

42.     S.B. 248 conflicts with existing provisions of Nevada law.  Specifically, NRS 649.332 provides, "When collecting a debt on behalf of a hospital, within 5 days after the initial communication with the debtor in connection with the collection of the debt, a collection agency shall, unless the following information is included in the initial communication, send a written notice to the debtor. . . . "  The written notice required in NRS 649.332(2) requires a statement indicating that:

(a)     If the debtor pays or agrees to pay the debt or any portion of the debt, the payment or agreement to pay may be construed as:

(1)     An acknowledgment of the debt by the debtor; and

(2)     A waiver by the debtor of any applicable statute of limitations set forth in NRS 11.190 that otherwise precludes the collection of the debt; and

(b)     If the debtor does not understand or has questions concerning his or her legal rights or obligations relating to the debt, the debtor should seek legal advice.

43.     S.B. 248 is therefore in direct conflict with NRS 649.332, and it is unclear whether the Nevada Legislature intended for NRS 649.332 to be repealed, or if this was simply overlooked as S.B. 248 was solely enacted as temporary relief due to the COVID-19 pandemic.

44.     As of July 1, 2021, collection agencies that are attempting to collect a hospital debt cannot comply simultaneously with both S.B. 248 and NRS § 649.332.

9

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

22811905.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

45.    S.B. 248 lacks sufficient definiteness that ordinary people can understand what conduct is prohibited, and Plaintiffs have been left to guess at what its requirements are and the extent to which they apply.

46.    S.B. 248 fails to establish standards to permit the Commissioner to enforce the law in a non-arbitrary, non-discriminatory manner.

47.    S.B. 248 is void and violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution because it is impermissibly vague.

**C.    S.B. 248 Is Preempted by the FDCPA.**

48.    Article VI, Paragraph 2 of the United States Constitution (the "Supremacy Clause") establishes that the federal constitution and federal law take precedence over state laws.

49.    While Section 816 of the FDCPA (codified at 15 U.S.C. § 1692o) allows states to enact laws that afford greater protections than those provided for in the FDCPA, the FDCPA and the Supremacy Clause do not allow states to enact laws that "are inconsistent" with any of the provisions of the FDCPA.

50.    S.B. 248 is inconsistent with the FDCPA in multiple respects.  Specifically, Section 7 of S.B. 248 forbids collection agencies from "taking any action to collect a medical debt" for sixty (60) days after first sending a required Section 7 Notice to a medical debtor.

51.    The Section 7 Notice details the specific information that debt collectors must provide.  Because Section 7 prohibits debt collectors from taking "any action" other than providing the information required in the Section 7 Notice, S.B. 248 prohibits debt collectors from taking any other action, including providing any information in the Section 7 Notice other than what is specifically required in Section 7.  This prohibition, and others, contradicts numerous requirements under the FDCPA.

*S.B. 248 Contradicts with the Federally-Required Mini-Miranda Warning.*

52.    The required Section 7 Notice constitutes a "communication" within the meaning of 15 U.S.C. § 1692a(2).

22811905.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

53.     Because Section 7 requires debt collectors to mail the Section 7 Notice before taking "any action" to collect a debt, the Section 7 Notice in all instances will constitute an "initial communication" within the meaning of 15 U.S.C. § 1692g(a).

54.     15 U.S.C. § 1692e(11) requires that in an initial communication with a debtor, a debt collector must disclose "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose…" (the "Mini-Miranda Warning").

55.     Section 7 of S.B. 248 forbids collection agencies from "taking any action to collect a medical debt" other than providing the information required in a Section 7 Notice.

56.     As such, Section 7 forbids a debt collector from including the federally mandated Mini-Miranda Warning in the Section 7 Notice.

57.     As a result, to comply with Section 7, a debt collector must violate 15 U.S.C. § 1692e(11).

58.     In addition, because Section 7 forbids a debt collector from "taking any action to collect a medical debt" after mailing the Section 7 Notice, a debt collector is prohibited from making the Mini-Miranda disclosure or otherwise complying with 15 U.S.C. § 1692e(11) when the debtor voluntarily contacts the debt collector.  Here too, a debt collector must violate 15 U.S.C. § 1692e(11) to comply with Section 7.

59.     Moreover, 15 U.S.C. § 1692(e)(11) requires a collection agency to advise a consumer in any subsequent communication that the communication is from a debt collector. Section 7 forbids a debt collector from providing this federally required disclosure if a Nevada consumer wishes to make a voluntary payment.

60.     In addition, Section 7.5 of S.B. 248 requires debt collectors to state that the debt "is not demanded or due" when a debtor contacts the debt collector.  This mandated disclosure is inconsistent with the federally required Mini-Miranda Notice, which requires debt collectors to state that the communication "is an attempt to collect a debt."

61.     The Section 7.5 disclosure requiring debt collectors to state that the debt "is not demanded or due" is even inconsistent with the requirements of the Section 7 Notice, where a debt collector must identify the health care provider that provided the goods or services "for which the

11

22811905.1

medical debt is owed." Section 7 and 7.5 therefore mandate that debt collectors state that a debt is both "owed" and "not demanded or due."

62.     As a result, S.B. 248 requires debt collectors to mislead debtors when collecting a medical debt, triggering a violation of 15 U.S.C. § 1692e (prohibiting the use of "any false, deceptive or misleading representation" and § 1692e(11).

### S.B. 248 Interferes with the Federally-Required Validation Notice.

63.     In addition, 15 U.S.C. § 1692g(a)(3-5) requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing," among other things:

    a.   A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

    b.   A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

    c.   A statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

64.     The foregoing required information is commonly referred to as a "Validation Notice required by the FDCPA.

65.     Because Section 7 of S.B. 248 forbids collection agencies from "taking any action to collect a medical debt" other than sending a letter with the information required in the Section 7 Notice, Section 7 forbids a debt collector from including a Validation Notice in the Section 7 Notice.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

12

22811905.1

66.    Because Section also forbids a debt collector from taking "any action" for sixty (60) days thereafter, Section 7 similarly forbids debt collectors from sending a separate Validation Notice within five days after its initial communication with the debtor.

Accordingly, S.B. 248 requires debt collectors to violate 15 U.S.C. § 1692g(a).*S.B. 248 Interferes with a Debt Collector's Express Federal Right to Engage In Debt Collection and Communicate with Debtors after Sending the Validation Notice.*

67.    15 U.S.C. § 1692g(b) expressly states that, after a debt collector provides the required Validation Notice, "[c]ollection activities and communications that do not otherwise violate this subchapter **may continue** during the 30-day period referred to in subsection (a)…."

68.    Section 7 is in direct conflict and inconsistent with the FDCPA's express allowance that debt collectors may continue to collect a debt and communicate with a debtor for thirty days after sending the Validation Notice.

69.    Therefore, Section 7 of S.B. 248 interferes with the Plaintiffs' federal right to engage in debt collection after sending a Validation Notice.

*S.B. 248 Prevents a Debt Collector From Providing Verification of a Debt.*

70.    15 U.S.C. § 1692g(b) also provides that, if a debtor requests verification of a debt within thirty days after receiving a Validation Notice, the debt collector must cease collection of that debt until it provides verification of the debt.   However, Section 1692g(b) allows debt collectors to respond and provide verification immediately, and then allows debt collections to resume collection of the debt.

71.    S.B. 248 prohibits debt collectors from verifying disputed debts until after the conclusion of Section 7's sixty (60) day window.

72.    As a result, S.B. 248 interferes with a collection agency's statutory obligation under the FDCPA to provide verification of a disputed debt, as well as its right to engage in debt collection after providing said verification.

73.    Further, S.B. 248 hurts Nevada consumers by denying them information where Nevada consumers have expressly asked for verification, as the debt collectors are statutorily prohibited from taking any action for sixty (60) days.

13

22811905.1

*S.B. 248 Places Debt Collectors at Risk of Misrepresentation under the FDCPA.*

74.     15 U.S.C. § 1692e prohibits debt collectors from making false representations, and specifically prohibits debt collectors from threatening to take any action "that cannot legally be taken or that is not intended to be taken."  15 U.S.C. § 1692e(5).

75.     The Section 7 Notice requires debt collectors to identify the medical provider "for which the medical debt is owed" and represent that either (a) the debt "has been assigned to the collection agency for collection"; or (b) the "collection agency has otherwise obtained the medical debt for collection."

76.     Section 7 simultaneously prohibits debt collectors from "taking any action to collect a medical debt," even though it requires debt collectors to represent that the debt has been placed for collection and that the amount is due.

77.     Section 7 requires debt collectors to falsely suggest an immediate intent to collect on the debt when the debt collector is actually barred from collecting the debt for sixty (60) days, leaving collection agencies in the untenable position of having to choose whether to violate Section 7 or 15 U.S.C. § 1692e(5).

78.     S.B. 248 requires debt collectors to send the Section 7 Notice, which necessarily suggests the collection agency is about to engage in debt collection activity.

79.     Yet, Section 7 prohibits a collection agency from taking any action for at least sixty (60) days, effectively requiring collection agencies to violate 15 U.S.C. § 1692e(5).

**D.     S.B. 248 Is Preempted By the FCRA.**

80.     The Supremacy Clause establishes that the federal constitution and federal law take precedence over state laws.

81.     S.B. 248 is inconsistent with the FCRA in multiple respects.  Specifically, Section 7 forbids collection agencies from "taking any action to collect a medical debt" for sixty (60) days after first mailing a Section 7 Notice.

82.     To the extent furnishing information to consumer reporting agencies constitutes an "action to collect a debt" within the meaning of S.B. 248, S.B. 248 prohibits credit reporting a medical debt for sixty (60) days after a collection agency mails the Section 7 Notice to a debtor.

14

22811905.1

83. In contrast, the FCRA contains a detailed and comprehensive statutory scheme governing credit reporting, including duties for furnishers of information. *See* 15 U.S.C. § 1681s-2.

84. The FCRA also contains detailed provisions governing the reporting of medical debts incurred by veterans of the U.S. Military. *See* 15 U.S.C. § 1681c.

85. The FCRA expressly preempts any state law "with respect to any subject matter" concerning the responsibilities of persons who furnish information to consumer reporting agencies. 15 U.S.C. § 1681t(b)(1)(F).

86. S.B. 248 purports to prohibit the furnishing of information concerning all medical debt, including the medical debts of veterans, for at least sixty (60) days after mailing of a Section 7 Notice.

87. S.B. 248 not only prohibits all credit reporting, but it also prohibits collection agencies from updating the information they have already furnished to consumer reporting agencies.

88. In fact, S.B. 248 prohibits collection agencies from communicating with debtors about their credit disputes, and prohibits collection agencies from taking action to address those disputes.

89. The FCRA preempts S.B. 248 because it imposes restrictions and prohibitions on the furnishing of information to consumer reporting agencies and the reporting of medical debt relating to military veterans, in violation of 15 U.S.C. § 1681t(b)(1)(F).

90. In addition, Section 7 is impliedly preempted by federal law because its prohibition stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress and interferes with the methods by which the FCRA was designed to reach its goal.

91. Specifically, 15 U.S.C. § 1681 sets forth the purposes of the FCRA, which include: (a) accuracy of credit reporting; and (b) fairness of credit reporting. In addition, Congress directed that the purpose of the FCRA was to require the adoption of "reasonable procedures for meeting the needs of commerce for consumer credit…."

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

15

22811905.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

92.    S.B. 248 interferes with and undermines the purpose of the FCRA by preventing accurate information to be furnished in a timely manner to consumer reporting agencies and therefore interferes with the ability of potential lenders and creditors from seeing the true status of a borrower's credit history.

**E.    S.B. 248 Constitutes a Prior Restraint on Constitutionally Protected Speech and Prohibits Access to Courts.**

93.    S.B. 248 imposes prior restraints on truthful, constitutionally protected speech between collection agencies and debtors. It is a content-based restriction because it applies to particular speech based upon the topic discussed or the idea or message expressed. S.B. 248, on its face and as applied, draws distinctions based on the message a speaker conveys.

94.    S.B. 248 prevents collection agencies from communicating in any fashion with medical debtors prior to mailing a Section 7 Notice.

95.    In addition, S.B. 248 prevents collection agencies from communicating about a medical debt in any fashion with a debtor, even if a debtor voluntarily contacts the collection agency within the sixty (60) day period after mailing of the Section 7 Notice.

96.    Specifically, when a debtor voluntarily communicates with a collection agency during the sixty (60) day period, a collection agency may only provide the information set forth in Section 7.5 and may literally say nothing else because it would constitute an "action to collect a medical debt" in violation of Section 7.

97.    S.B. 248 also prohibits collection agencies from reporting unpaid debts debt to consumer reporting agencies during that sixty (60) day period.

98.    The sixty (60) day restriction is a prior restraint on constitutionally protected speech because it prohibits Plaintiffs from communicating truthful speech about the debt and the debtor to third parties.

99.    In addition, Section 7 prohibits the filing of any civil action to collect a debt for at least sixty days after the Section 7 Notice is mailed, barring all access to courts during the sixty (60) day period.

22811905.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

100.   Defendant cannot overcome the presumption of unconstitutionality that arises from a content-based restriction and cannot establish that S.B. 248 is narrowly tailored to serve compelling state interests.  The Statute, therefore, fails strict scrutiny review.

101.   S.B. 248 also fails intermediate scrutiny review because it is not content neutral and because Defendant cannot demonstrate it serves a substantial state interest and is designed in a reasonable way to accomplish that end.

**F.    S.B. 248 Violates the Equal Protection Clause.**

102.   S.B. 248 was introduced and sold to the Nevada Legislature as providing COVID-19 relief to consumers.  Yet, its prohibitions and requirements are permanent, and the law appears to have been introduced based upon a false premise.

103.   Regardless, even under a "conceivable" rational basis analysis, S.B. 248 is impermissibly underinclusive because it applies to collection agencies, and possibly attorneys, but does not apply to medical service providers who are attempting to collect their own debt.  The Legislature asserted no rational basis for this distinction during session, considered no evidence justifying this distinction, and there is no conceivable rational basis for this distinction.

104.   In addition, S.B. 248 is impermissibly underinclusive because NRS Chapter 649 exempts banks and other creditors and nonprofit cooperative associations from the same rules, even though Section 2 of S.B. 248 specifically governs the financing or extension of credit by third parties.  *See* NRS 649.020(2).  The Legislature asserted no rational basis for this distinction during session, considered no evidence justifying this distinction, and there is no conceivable rational basis for this distinction.

105.   S.B. 248 is also underinclusive because it applies only to the collection of "medical debt."  It does not govern non-medical debt, and the Nevada Legislature offered no rational basis (and none exists) as to why it chose to regulate medical debt only, instead of all debt collection.  The Legislature asserted no rational basis for this distinction during session, considered no evidence justifying this distinction, and there is no conceivable rational basis for this distinction.

106.   As a result, S.B. 248 violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

17

22811905.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief)**

107.    Plaintiffs incorporate and reallege the previous paragraphs as though fully set forth herein.

108.    The parties in this action are adverse and there is an actual controversy because they disagree as to whether S.B. 248 is (a) constitutional; (b) preempted by federal law; and (c) can be complied with.

109.    Defendant has made it her unambiguous intention to enforce S.B. 248.

110.    The respective rights of the parties, as to whether S.B. 248 is enforceable, must be determined.

111.    The foregoing issues are ripe for judicial determination because there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

112.    Plaintiffs have been forced to retain counsel to prosecute this action and are thus entitled to an award of attorney's fees and costs as provided by applicable law.

**SECOND CLAIM FOR RELIEF**

**(42 U.S.C. § 1983)**

113.    Plaintiffs incorporate and reallege the previous paragraphs as though fully set forth herein.

114.    42 U.S.C. § 1983 provides a civil right of action against any person who, under color of state law, deprives any person of the rights, privileges, or immunities secured by the Constitution and laws.

115.    The Commissioner has been charged with enforcing the provisions of S.B. 248 and, as such, is acting under color of state law within the meaning of  42 U.S.C. § 1983.

116.    S.B. 248 violates the federally protected rights of Plaintiffs, including rights of free speech under the First Amendment of the United States Constitution, rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution,

22811905.1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

rights guaranteed by the Supremacy Clause of the United States Constitution, 15 U.S.C. § 1681t, and 15 U.S.C. § 1692o.

117. Implementation and enforcement of S.B. 248 will have deleterious effect on Plaintiff, its members and Nevada consumers.

118. Compliance with S.B. 248 will create automatic violations of the FDCPA and Nevada law, Plaintiffs unable to comply with both state and federal law.

119. S.B. 248 is impermissibly vague and ambiguous as it imposes requirements leaving Plaintiffs unclear with how to comply.

120. Plaintiffs will suffer irreparable harm to their constitutional rights if S.B. 248 is enforced. Plaintiffs' injuries will continue and be repeated each day S.B. 248 is law and permitted to remain in force, in violation of the United States Constitution.

121. Plaintiffs have a substantial likelihood of success on the merits because S.B. 248 is facially unconstitutional preempted by federal law.

122. Plaintiffs have no adequate remedy at law because legal relief cannot remedy the imminent denial of fundamental constitutional rights. Unless S.B. 248 is found unconstitutional and ceases to be law, Plaintiffs' rights will continue to be violated.

123. The balance of harm as to irreparable injury to Plaintiffs in comparison to the "harm" to Defendant weighs heavily in Plaintiffs' favor. When a law that legislators or voters wish to enact is likely unconstitutional, their interests do not outweigh those of the Plaintiff in having their constitutional rights protected. *Coalition For Econ. Equity v. Wilson*, 112 F.3d 692, 699 (9th Cir. 1997).

124. The granting of injunctive relief will be in the public interest in that there is always a public interest in the protection of constitutional rights, especially fundamental rights. Moreover, enforcement of S.B. 248 will actually deprive Nevada consumers of rights afforded to them under federal law.

125. Plaintiffs have been deprived of fundamental liberty rights in violation of the United States Constitution.

22811905.1

126.    As a direct and proximate result of the violations contained in S.B. 248, Plaintiffs are entitled to preliminary and permanent injunctive relief.

127.    Plaintiffs have been forced to retain counsel to prosecute this action and are thus entitled to an award of reasonable attorney's fees and costs as provided by applicable law, including Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief from this Court as follows:

1.    For a declaratory judgment holding that S.B. 248 in unenforceable because (a) it violates the U.S. Constitution; and (b) that its various provisions are preempted by federal law;

2.    For prospective injunctive relief, including a temporary restraining order and preliminary and permanent injunctive relief enjoining enforcement of S.B. 248 and holding that S.B. 248 is unenforceable because (a) it violates the U.S. Constitution; and (b) that its various provisions are preempted by federal law;

/ / /

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

20

22811905.1

3.    For attorney's fees and costs of suit; and

4.    For any additional relief this Court deems just and proper.

DATED this 25th day of June, 2021.

/s/ Patrick J. Reilly

Patrick J. Reilly, Esq.
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV  89106-4614

*Attorneys for Aargon Agency, Inc., Allied Collection Services, Inc., Business and Professional Collection Service, Inc., Clark County Collection Service, LLC, Collection Service of Nevada, PlusFour, Inc., Donna Armenta, Donna Armenta Law, and the Nevada Collectors Association*

DATED this 25th day of June, 2021.

/s/ David Israel

David Israel, Esq. *(pro hac vice forthcoming)*
SESSIONS ISRAEL & SHARTLE
3850 N. Causeway Boulevard, Suite 200
Metairie, LA 70002-7227

James K. Schultz, Esq.
Brittany L. Shaw, Esq. *(pro hac vice forthcoming)*
SESSIONS ISRAEL & SHARTLE
1545 Hotel Circle South, Suite 150
San Diego, CA 92108-3426

*Attorneys for ACA International, AssetCare, LLC, Capio Partners, LLC, CF Medical, LLC, RM Galicia d/b/a Progressive Management, LLC, and The Law Offices of Mitchell D. Bluhm and Associates, LLC*

BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, NV 89106-4614
702.382.2101

21

22811905.1