UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| AARGON AGENCY, INC., *et al.*, | Case No. 2:21-cv-01202-RFB-BNW |
| Plaintiffs, | **ORDER** |
| v. | |
| SANDY O'LAUGHLIN, | |
| Defendant. | |

## I.   INTRODUCTION

Before the Court are Plaintiffs' Motion for Temporary Restraining Order, ECF No. 4; Plaintiffs' Motion for Preliminary Injunction, ECF No. 5; Defendant's Motion to Strike, ECF No. 43; Plaintiffs' Motion for Leave to Amend/Correct Complaint, ECF No. 52; and Plaintiffs' Motion for Leave to Supplement and Amend Application for Temporary Restraining Order and Motion for Preliminary Injunction, ECF No. 53.

For the reasons stated below, Defendant's Motion to Strike [ECF No. 43] is DENIED; Plaintiffs' Motion for Leave to Amend/Correct Complaint [ECF No. 52] is GRANTED; Plaintiffs' Motion for Leave to Supplement and Amend Application for Temporary Restraining Order and Motion for Preliminary Injunction [ECF No. 53] is GRANTED; and Plaintiffs' Motion for Temporary Restraining Order and Motion for Preliminary Injunction [ECF Nos. 4, 5] are DENIED.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The Court makes the following findings based upon the record. In 2021, in response to the devastating economic toll wrought by the COVID-19 pandemic, the Nevada Legislature enacted Senate Bill 248 ("SB 248"). The stated purpose of SB 248 is to provide 60-days-notice to medical debtors that their medical debt has been handed over to a collection agency, so that they may take measures to verify the debt and consider their options before debt collection begins. SB 248, which amends Chapter 649 of the Nevada Revised Statutes ("NRS"), was signed into law on June 2, 2021.

SB 248 contains three sections relevant to the instant matter:

Section 7 of SB 248 requires that a collection agency provide 60-days written notice to a debtor, via registered or certified mail, "before taking any action to collect a medical debt . . . ." SB 248, § 7(1). Section 7 also mandates that certain information be included in the notice, including: the name of the healthcare provider that provided the goods or services for which the debt is owed; the date on which goods and services were provided; the principal amount of medical debt; the name of the collection agency; and whether the medical debt has been assigned to the agency for collection, or whether the agency has otherwise obtained the debt for collection. Id. at § 7(1)-(2).

Section 7.5 of SB 248 describes the circumstances under which a collection agency may take a voluntary payment within the 60-day notice period. Id. at § 7.5(1). First, the medical debtor must have initiated contact with the collection agency during the 60-day period. Id. at § 7.5(1)(a). Further, the collection agency must disclose to the medical debtor that a payment is not demanded or due, and that the debt will not be reported to any credit reporting agency ("CRA") during the 60-day notice period. Id. at § 7.5(1)(b)(1)-(2). Section 7.5 also provides that no action taken by a medical debtor to initiate contact with a collection agency may be construed as a waiver of the 60-day notice period. Id. at § 7.5(2). Finally, Section 7.5 offers certain legal protections to medical debtors who make voluntary payments in the 60-day period.[1] See id. at § 7.5(3)(a)-(c).

---

[1] § 7.5(3) states that any payment made towards a medical debt within the 60-day period "(a) Does not extend the applicable statute of limitations; (b) Is not an admission of liability; and (c) Shall

2

Section 8 of SB 248 prohibits collection agencies and their managers, agents, and/or employees from obtaining confessions of judgment for medical debt, and from appearing for a debtor in a judicial proceeding. Id. at § 8(1). It further prohibits those persons and entities from initiating a civil action to collect medical debt "if the amount of the medical debt, excluding interest, late fees, collection costs, attorney's fees and any other fees or costs, is less than the maximum jurisdictional amount" set forth in NRS 37.010. Id. at § 8(2). Finally, Section 8 limits attorney's fees and collection fees to 5 percent of the medical debt itself, exclusive of interest, costs, and fees. Id. at § 8(3).

On June 25, 2021, Plaintiffs filed a Complaint, alleging that SB 248 is unconstitutional and preempted by federal law. ECF No. 1. Plaintiffs are trade groups, collections agencies, and licensed debt collectors that engage in consumer debt collection and credit reporting on behalf of their clients. Plaintiffs sue Defendant Sandy O'Laughlin in her official capacity as Commissioner of the State of Nevada's Department of Business and Industry, Financial Institutions Division ("FID"), as the Commissioner is empowered to enforce SB 248 under Chapter 649 of the NRS. See NRS § 649.051. In this facial challenge to SB 248, Plaintiffs argue that the law (1) is unconstitutionally vague; (2) conflicts with the Fair Debt Collection Practices Act ("FDCPA"); (3) is preempted by the Fair Credit Reporting Act ("FCRA"); (4) is an unconstitutional prior restraint on speech; and (5) violates the Equal Protection Clause of the Fourteenth Amendment.

On June 28, 2021, Plaintiffs filed a Motion for TRO ("TRO") and Motion for Preliminary Injunction ("PI"). ECF Nos. 4, 5. Plaintiffs argue that in the absence of an injunction enjoining enforcement of SB 248, they face irreparable harm, because enforcement would deprive Plaintiffs of their constitutional rights; force them to choose between compliance with state law and federal law; and expose them to liability for monetary damages, fees, and costs. Defendant responded to the Motion for TRO and Motion for PI on July 13, 2021. ECF No. 23. Plaintiffs replied on July 20, 2021. ECF No. 25.

The Court held two hearings on Plaintiffs' Motion for TRO and Motion for PI, on July 27,

_____

not be construed as a waiver of any defense to the collection of medical debt."

2021, and on August 16, 2021. ECF Nos. 29, 37. On August 10, 2021, per the Court's instruction, Defendant filed a Notice of Intent to Promulgate Regulations. ECF No. 31. Defendant's Notice provided a general timeline for the implementation of anticipated regulations. Id. Plaintiffs filed a Response to Defendant's Notice the next day. ECF No. 32. On August 29, 2021, Plaintiffs filed a Supplement to their Motion for PI and Motion for TRO. ECF No. 40. On September 7, 2021, Defendant filed a Motion to Strike the Response (ECF No. 32) and the Supplement (ECF No. 40). ECF No. 43.

On November 30, 2021, Plaintiffs filed a Motion to Amend/Correct the Complaint, and a Motion to Amend/Correct the Motion for PI and Motion for TRO. ECF Nos. 52, 53. Defendant responded to both motions on December 14, 2021. ECF Nos. 54, 55. Plaintiffs filed a Reply to the Motion to Amend/Correct the Complaint on December 21, 2021, ECF No. 56, and a Reply to the Motion to Amend/Correct the Motion for PI and Motion for TRO on December 28, 2021. ECF No. 59.

This Order follows.

### III.     DEFENDANT'S MOTION TO STRIKE [ECF NO. 43]

At the July 27 hearing on Plaintiffs' Motion for TRO and Motion for PI, the Court instructed Defendant to file a supplement advising the Court if the FID intended to promulgate any regulations regarding SB 248, and if so, a timeline with specific deadlines for issuance of those regulations. See ECF No. 30. Defendant subsequently filed a Notice of Intent to Promulgate Regulations, setting forth the following timeline:

- Draft regulations to be completed by August 24, 2021.
- Small business impact survey to be sent by September 7, 2021.
- Small business impact survey responses due by September 17, 2021.
- FID to complete small business impact statement, based on comments received, by October 8, 2021.
- FID conducts a workshop on draft regulations, to be completed by October 26, 2021 (should a second workshop be necessary, it will occur by November 24, 2021).

- Draft regulations sent to the Nevada Legislative Counsel Bureau (the "Bureau") for their review – a process which can take between 30 to 60 days.

- Once the Bureau returns the draft regulations to FID, FID will publish public notice of an adoption hearing with 30 days notice – at the latest, by December 24, 2021

- If the regulations are adopted by the FID, the regulations are sent to the Nevada Legislative Commission ("Commission") for its review. If the Commission approves the regulations adopted by the FID, they shall be "promptly" filed with the Nevada Secretary of State, NRS 233B.067(5).

On August 11, 2021, Plaintiffs filed a Response to Defendant's Notice, arguing that based on the review and approval process set forth in Defendant's notice, regulations will not be finalized until January 2022, and are more likely to be completed by 2023. ECF No. 32. On August 29, 2021, Plaintiffs filed a supplemental response ("Supplement") to Defendant's Notice. ECF No. 40. Plaintiffs seek to supplement the record with the draft proposed regulations issued by the FID on August 24, 2021. ECF No. 40. Plaintiffs allege that the proposed draft regulations do not remedy any of the alleged conflicts between SB 248 and the FDCPA and FCRA, and thus the Court should immediately enter injunctive relief to enjoin enforcement of SB 248. Defendant then filed a Motion to Strike the Response and the Supplement. ECF No. 43.

For the reasons stated below, the Motion to Strike is DENIED.

### a. Legal Standard

Local Rule 7-2 provides that a party "may not file supplemental . . . briefs, authorities, or evidence without leave of court granted for good cause," and may "strike supplemental filings made without leave of the court." LR 7-2(g).

District courts have inherent power to control their own dockets, including the power "to determine what appears in the court's records" and to strike items from the docket to address conduct that is improper but does not warrant dismissal. Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404-05 (9th Cir. 2010). Whether to grant a motion to strike lies within the discretion of the district court. Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010); Novva Ausrustung Grp., Inc. v. Kajioka, No. 2:17-cv-01293-RFB-VCF, 2017 U.S. Dist. LEXIS

108614, at *5-6 (D. Nev. July 13, 2017).

### b.   Analysis

Defendant argues that the Court should strike Plaintiffs' Response and Supplement, ECF Nos. 32, 40, because they were filed without leave of the Court in violation of Local Rule 7-2(g). Defendant contends that Plaintiffs' Response and Supplement are improper surreplies filed in support of Plaintiffs' Motion for PI and Motion for TRO.

Plaintiffs counter that this is not a case where an improper surreply has been filed in an attempt to gain a procedural advantage in briefing. With respect to the Supplement, Plaintiffs emphasize that the FID issued proposed draft regulations only after briefing had closed and the Court's August 16 evidentiary hearing had concluded. Plaintiffs argue that they had no control over the FID's timeline with respect to the proposed draft regulations, and that Local Rule 7-2(g) thus does not prohibit Plaintiffs' responses to the FID's notice.

The Court denies Defendant's Motion to Strike. One of the key issues discussed at the July 27 hearing pertained to what regulations might be promulgated to clarify the scope of SB 248, and the timeline for the issuance of any such regulations. The Court notes that Plaintiffs could not have substantively responded to the projected timeline prior to the close of briefing on their motions for TRO and PI, because of the timing of the issuance of the proposed draft regulations. Further, the Court finds it appropriate for Plaintiffs to have brought the issuance of the Draft Regulations to the Court's attention, given that the Court expressed an interest in the subject at oral argument on July 27. The Court also finds that Plaintiffs' supplemental briefs are appropriately narrow, cabined only to the discrete issue of whether any proposed regulations by the FID may cure the alleged constitutional infirmities raised by Plaintiffs.

The Court accordingly DENIES Defendant's Motion to Strike, ECF No. 43.

### IV.   PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT [ECF NO. 52] AND MOTION FOR LEAVE TO SUPPLEMENT AND AMEND MOTION FOR TRO AND MOTION FOR PI [ECF NO. 53]

Plaintiffs move for leave to amend the Complaint. ECF No. 52. Plaintiffs also move the for leave to supplement their Motion for TRO and Motion for PI. ECF No. 53.

Plaintiffs seek to amend their Complaint to add two arguments to their existing claim that SB 248 is preempted by the FDCPA: (1) that SB 248's certified mail requirement is in conflict with the FDCPA's prohibition on creating a "false sense of urgency" to debtors; and (2) that debt collectors cannot simultaneously comply with SB 248 and a recent regulation promulgated by the Consumer Financial Protection Bureau ("CFPB") – "Regulation F" – which imposes additional requirements on debt collectors under the FDCPA. Plaintiffs seek to supplement their Motion for TRO and Motion for PI with their argument pertaining to Regulation F. They also seek to supplement the TRO and PI motions with the declarations of Richard Bennett and Tim Myers, which purportedly speak to the "devastating impact SB 428 is having on licensed debt collectors nearly five full months after the law has taken effect, including the pending closure of one licensee, and the halting of all new medical debt collection in Nevada . . . ."

For the reasons stated below, both motions to amend are GRANTED.

### a. Legal Standard

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion to amend "is to be liberally granted where from the underlying facts or circumstances, the plaintiff may be able to state a claim." DCD Programs, Ltd. V. Leighton, 833 F.2d 183, 186 (9th Cir. 1987). Further, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "District courts have broad discretion to allow supplemental pleadings." Fremont Inv. & Loan v. Singleton, No. 2:03-cv-1406-PMP-RJJ, 2007 U.S. Dist. LEXIS 30234, at *19 (D. Nev. April 20, 2007) (citing Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988)).

When considering whether to grant a motion seeking leave to amend a complaint, the Court may consider whether there is (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility in amendment; and (5) whether the Plaintiff has previously amended the complaint. Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990). Leave to amend should be denied if the proposed amendment is futile. Carrico v. City & Cty. of San Francisco, 656 F.3d 1002, 1008

(9th Cir. 2011).

Supplementation of the existing record is prohibited without leave of the court. LR 7-2(g). "A party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." Id.

### b. Analysis

#### I. *Motion for Leave to File Amended Complaint [ECF No. 52]*

First, Plaintiffs seek to amend their Complaint to add the argument that SB 248's certified mail requirement cannot coexist with the FDCPA, because under Trans World Accounts, Inc. v. FTC, 594 F.2d 212, 215 (9th Cir. 1979), debt collectors may not send materials to debtors that misrepresent the import or urgency of a communication, which certified mail would allegedly do. Second, Plaintiffs seek to add the argument that debt collectors cannot simultaneously comply with SB 248 and Regulation F. Regulation F, codified on November 30, 2021 at 12 C.F.R. § 1006, creates a model validation notice and provides a safe harbor to debtors who send the model notice. Plaintiffs argue SB 248 requires debt collectors to send a completely different notice, and thus if a debt collector complies with SB 248, they will lose Regulation F's safe harbor.

Defendant argues that amendment of the Complaint is improper because the allegations that Plaintiffs seek to add could not withstand a motion to dismiss, and thus the futility doctrine bars amendment. Defendant argues that SB 248's certified mail requirement does not create a false sense of urgency to debtors, in violation of Trans World. Defendant argues that in Trans World, the Ninth Circuit held that a debt collection agency's letter formats were deceptive in violation of the Federal Trade Commission Act (the FDCPA's predecessor) because they were made to look like Western Union Telegrams and threatened imminent legal action; here, by contrast, the certified mail requirement of SB 248 does not – by its format or purpose – denote urgency, such that it would be in conflict with the FDCPA. Further, Defendant contends that there is no tension between Regulation F and SB 248's certified mail requirement, because SB 248's 60-day notice applies *prior* to any action to collect a medical debt, whereas Regulation F's model validation notice is only given once a debt collection starts.

Defendant also points to the FDCPA's savings clause, which provides that a state law "is

1   not inconsistent" with the FDCPA "if the protection such law affords any consumer is greater than

2   the protection provided by this subchapter." 15 U.S.C. § 1692n. Because SB 248 provides greater

3   protection to medical debtors in Nevada than the FDCPA, Defendant argues, any FDCPA

4   preemption argument lacks merit, and thus Plaintiffs' efforts to expand their FDCPA preemption

5   claim are futile and should be rejected.

6          The Court does not find that the futility doctrine bars amendment here. A proposed

7   amendment is futile if it cannot withstand a Rule 12(b)(6) motion for failure to state a claim. <u>Miller</u>

8   <u>v. Rykoff-Sexton, Inc.</u>, 845 F.2d 209, 214 (9th Cir. 1988). The Court finds that both of Plaintiffs'

9   proposed new arguments with respect to FDCPA preemption have satisfied the requirement of a

10  "short and plain statement of the claim showing that the pleader is entitled to relief," taking all

11  "well-pleaded allegations of material fact in the complaint . . . as true" and "constru[ing] [them] in

12  the light most favorable" to Plaintiffs. Fed. R. Civ. P. 8(a)(2); <u>Faulkner v. ADT Sec. Services, Inc.</u>,

13  706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted). Further, there is no indication that the

14  amendment is sought in bad faith, or that there is undue delay or prejudice to Defendant. The Court

15  notes that this is Plaintiffs' first attempt to amend the Complaint, and that it was timely brought

16  once Plaintiffs learned of Regulation F.

17         As such, Plaintiffs' Motion for Leave to File Amended Complaint is GRANTED, and the

18  Proposed First Amended Complaint [ECF No. 52-1] shall serve as the operative complaint for the

19  purposes of this Order.

20         II.   *Motion for Leave to Supplement Motion for TRO and Motion for PI*

21         *[ECF No. 53]*

22         Next, Plaintiffs seek to supplement their Motion for TRO and Motion for PI with their

23  argument pertaining to Regulation F, as well as with the supplemental declarations of Richard

24  Bennett and Tim Myers. Bennett is the President of PlusFour, Inc. – one of the individual Plaintiffs

25  in this matter – and his declaration states that PlusFour is at risk of shuttering due to uncertainties

26  regarding how to comply with SB 248 and federal statute simultaneously. Bennett attests that since

27  SB 248 was enacted, the medical debt collection industry has "come to a halt," and that PlusFour

28  has been forced to lay off its entire staff. Myers is the President of the Nevada Collectors

1    Association ("NCA"), a trade association whose members consist of collections agencies, law

2    firms, and asset buying companies engaged in the collection of medical debt. Myers' declaration

3    states that because SB 248 "forces debt collectors to choose between complying with state law at

4    the expense of complying with federal law," his members have stopped engaging in medical debt

5    collection, creating an "industry-wide standstill in medical debt collection."

6            Defendant raises many of the same arguments regarding preemption in opposition to

7    Plaintiffs' motion to supplement their TRO/PI applications with additional information about

8    Regulation F. With respect to the supplemental declarations, Defendant argues that economic harm

9    is not irreparable harm – thus, to the extent the declarations of Bennett and Myers speak to the risk

10   of individual debt collectors experiencing financial loss as a result of SB 248, the Court should not

11   consider these affidavits.

12           The Court finds that good cause exists to support supplementation of the record. The Court

13   having permitted Plaintiffs to amend their Complaint to include argument pertaining to Regulation

14   F, it also finds it appropriate to permit Plaintiffs to argue that Regulation F conflicts with SB 248

15   for the purposes of requesting a TRO or PI. The Court again acknowledges that Plaintiffs timely

16   sought leave to supplement the record with Regulation F, given that the federal regulatory

17   landscape has developed since the time Plaintiffs filed the initial Complaint and motions for

18   injunctive relief. This justifies the filing of Plaintiffs' proposed supplemental material.

19           Further, while it is true that pure economic harm does not constitute irreparable harm for

20   the purposes of evaluating a TRO or a PI, "[t]he threat of being driven out of business is sufficient

21   to establish irreparable harm." Am. Passage Media Corp. v. Cass Communications, Inc., 750 F.2d

22   1470, 1474 (9th Cir. 1985). Both Bennett's and Myers' declarations attest that there is a risk of

23   both business and industry collapse, and thus may support Plaintiffs' Motion for TRO and Motion

24   for PI.

25           Plaintiff's Motion for Leave to Supplement the Motion for TRO and Motion for PI is

26   therefore GRANTED, and the Court shall consider the attached exhibits in evaluating the Motion

27   for TRO [ECF No. 4] and Motion for PI [ECF No. 5].

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.   PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [ECF NOS. 4, 5]

Plaintiffs argue that SB 248 is unenforceable, unconstitutional, and preempted by federal law, and that an injunction is required to prevent irreparable harm. In this facial challenge to SB 248, Plaintiffs contend that SB 248 (1) is unconstitutionally vague; (2) conflicts with the Fair Debt Collection Practices Act ("FDCPA"); (3) is preempted by the Fair Credit Reporting Act ("FCRA"); and (4) is an unconstitutional prior restraint on speech.

For the reasons stated below, Plaintiffs' Motions for TRO and PI, as supplemented by ECF No. 53, are DENIED.

### a.   Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014) (citing Winter, 555 U.S. 7, 20 (2008)).

A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements. Id. at 1134-35 (citation omitted).

The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001).

### b.   Analysis

I.   *Likelihood of Success on the Merits*

11

A)   <u>Vagueness</u>

First, Plaintiffs argue they are likely to succeed on the merits of their claim that SB 248 is unconstitutionally vague. Plaintiffs argue that Sections 7, 7.5, and 8 of SB 248 are all unconstitutionally vague.

"A law is void for vagueness 'if it is impermissibly vague in all of its applications.'" <u>United States v. Makowski</u>, 120 F.3d 1078, 1080 (9th Cir. 1997) (quoting <u>Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 497 (1982)). A statute is also void for vagueness "when it does not sufficiently identify the conduct that is prohibited." <u>Id.</u> To satisfy due process, a statute must be "sufficiently clear so as not to cause persons 'of common intelligence . . . necessarily [to] guess at its meaning and 'to differ as to its application.'" <u>Id.</u> (quoting <u>United States v. Wunsch</u>, 84 F.3d 1110, 1119 (9th Cir. 1995)). To mount a successful facial challenge to a statute for vagueness, a plaintiff must establish "that no set of circumstances exits under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications." <u>Wash. State Grange v. Wash. State Republican Party</u>, 552 U.S. 442, 449 (2008) (internal quotations omitted). "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" <u>Human Life of Wash., Inc. v. Brumsickle</u>, 624 F.3d 990, 1021 (9th Cir. 2010) (quoting <u>Hill v. Colorado</u>, 530 U.S. 703, 733 (2000)). Further, where otherwise imprecise terms are "used in combination with terms that provide sufficient clarity," vagueness problems may be avoided. <u>Id.</u>

Plaintiffs first contend that Section 7 is unconstitutionally vague because it fails to define key terms. For instance, while Section 7(1) forbids "taking any action to collect a medical debt" for 60 days after sending the required notice, it does not specify whether an "action" is merely a civil legal action, or some broader category of conduct. Plaintiffs also allege it is silent as to what a collector may or may not do if the notice is returned as undeliverable. Plaintiffs also argue that Section 7 is unconstitutionally vague because it conflicts with NRS § 649.332, which provides that "when collecting a debt on behalf of a hospital, within 5 days after the initial communication with the debtor in connection with the collection of the debt, the collection agency shall . . . send a written notice to the debtor."

With respect to Section 7.5, Plaintiffs argue the section is unconstitutionally vague because it (1) fails to address whether voluntary payments may be accepted from third parties acting on behalf of the debtor; (2) requires disclosure that payment is not "demanded or due," but does not state whether this requirement applies when a voluntary payment is initiated by mail prior to the collector having the opportunity to make the relevant disclosure; and (3) contradicts Section 7 insofar as it requires a statement that a debt is "not demanded or due," while Section 7 requires the 60-day notice to identify the medical goods and/or services provided for which the debt is owed.

Finally, Plaintiffs broadly argue that Section 8 is vague because it does not indicate whether attorneys fall within the ambit of SB 248. Plaintiffs note that previously, attorneys have not been required to obtain a Chapter 649 license and have never been subject to the authority of the Commissioner under Chapter 649, but because Section 8 speaks to debt collectors and their "agents," attorneys (who are agents of their clients under state law) may now be subject to Chapter 649's provisions.

Defendant argues the relevant sections of SB 248 are not unconstitutionally vague. With respect to Section 7, Defendant notes that Plaintiffs are highly sophisticated collection companies, and it should be patently clear to them from the terms of SB 248 that "any action to collect medical debt" refers to *any and all action*. Defendant emphasizes that NRS § 649.020 defines Plaintiff collection agencies as persons engaged in the business of "obtaining in any manner the payment of a claim owed or due." As such, Plaintiffs' claim that the law is vague for failure to more specifically define the term "action," in this context, is baseless. Further, if the notice is returned undeliverable, Plaintiffs will not be liable, as their only obligation under Section 7 is to send the notice. Finally, Defendant argues there is no conflict with NRS § 649.332, because that provision deals with what debt collectors must do when they begin collecting debt, whereas SB 248 pertains to what debt collectors must do *before* taking action.

Defendant also rejects Plaintiffs' vagueness arguments about Section 7.5. Defendant argues it is plainly obvious that payments made on behalf of a debtor can be accepted, as nowhere in Section 7.5 is such acceptance discouraged. Defendant also notes that if a voluntary payment is made by mail prior to issuance of the notice, a debt collector may nevertheless advise the debtor

of their rights prior to *acceptance* of the payment. Finally, Defendant argues there is no contradiction between Section 7 and Section 7.5, because collection agencies may simultaneously identify under Section 7 the goods and services for which the debt is owed, and *also* state – in accordance with Section 7.5 – that the debt is not yet demanded or due.

Finally, Defendant urges this Court to reject Plaintiffs' challenge to Section 8. Defendant notes that attorneys were previously exempt from NRS Chapter 649's provisions only insofar as their actions did not mimic those of a collection agency. As such, nothing has changed about the status quo of Chapter 649 – so long as attorneys do not engage in the conduct prohibited by SB 248 as a collection agent, the law does not apply to them.

The Court finds that Plaintiffs are unlikely to succeed on the merits of their claim that SB 248 is unconstitutionally vague. As a preliminary mater, the Court recognizes that "the degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment," and that economic regulations like SB 248 are subject "to a less strict vagueness test because its subject matter is often more narrow, and because businesses . . . can be expected to consult relevant legislation in advance of action." Hoffman Estates, 455 U.S. at 498. Further, "the regulated enterprise may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." Id. Indeed, in this case, Plaintiffs have represented to the Court that they have sought clarification from Defendant, and Defendant has also indicated that the FID is in the process of promulgating regulations to clarify the manner in which SB 248 will be enforced against the medical debt collection industry.

Taking each challenged section in turn, the Court first finds that Section 7's failure to more specifically define key phrases and terms, such as "any action to collect a medical debt," does not render Section 7 vague. Interpreting the phrase "any action" in accordance with its plain and ordinary meaning, see id., it is clear that Section 7 refers to any and all action. Further, reading the phrase in context with NRS 649.020, the Court infers that the "action" referred to is any conduct that is related to collecting "in any manner the payment of a claim owed." See Perez-Guzman v. Lynch, 835 F.3d 1066, 1074 (9th Cir. 2016) (stating that the court's goal is "to understand the statute as a symmetrical and coherent regulatory scheme and to fit, if possible, all parts into a

14

1    harmonious whole" (internal quotations and citations omitted)). Nor does the Court find that
2    Plaintiffs are likely to succeed on the claim that Section 7 conflicts with NRS § 649.332. NRS
3    § 649.332(2) sets forth certain communication requirements for debt collectors collecting a debt
4    on behalf of a hospital, after an initial communication is made to the debtor "in connection with
5    the collection of the debt." Section 7 of SB 248, by contrast, explicitly states that the 60-day notice
6    is due "*before* taking any action to collect a medical debt" – thus, it cannot be said that the notice
7    is made "in connection with the collection of the debt." (emphasis added).

8         The Court further finds that Plaintiffs are unlikely to succeed on the merits of their
9    vagueness arguments pertaining to Section 7.5, largely for the reasons Defendant identifies. Many
10   of the challenges to Section 7.5 raised by Plaintiffs constitute the type of "specula[tion] about
11   'hypothetical' or 'imaginary' cases that the Supreme Court has cautioned against in mounting a
12   facial attack on a statute's constitutionality." <u>Wash. State Grange</u>, 552 U.S. at 449-50. Nothing in
13   the language of SB 248 suggests that payments may not be voluntarily made on a debtor's behalf
14   by a third party, or that a collection agency cannot provide notice to a debtor who has made a
15   voluntary payment by mail *before* the agency accepts payment. The Court also finds there to be
16   no contradiction between Section 7 and Section 7.5, because the language of SB 248 does not
17   foreclose the possibility that a collection agency may simultaneously identify the medical goods
18   and services provided for which a debt is owed, and also inform the debtor that the debt not yet
19   demanded or due.

20        The Court also rejects Plaintiffs' vagueness challenge to Section 8. NRS Section
21   649.020(2)(g) states that attorneys are *not* considered collections agencies unless they are
22   conducting themselves like collection agencies, "so long as they are retained by their clients to
23   collect or to solicit or obtain payment of such clients' claims in the usual course of the practice of
24   their profession." Section 8(1) makes SB 248 applicable to *collection agencies* and their "agents"
25   – not lawyers operating in the ordinary course. Thus, even if an attorney is an "agent" of her client
26   under Nevada law, she would be exempt from SB 248, so long as she complies with the terms of
27   NRS 649.020(2)(g) and does not work as the agent of a collection agency.

28        Because Plaintiffs have failed to establish that "no set of circumstances exist[] under which

15

[SB 248] would be valid," the Court finds Plaintiffs are unlikely to succeed on the merits of their vagueness challenge. Wash. State Grange, 552 U.S. at 449. Further, the Court notes that vagueness challenges will be rejected when it is clear as a whole what the law prohibits. Brumsickle, 624 F.3d at 1021. Taken as a whole, it is evident that the function of SB 248 is to create a 60-day breathing period for medical debtors, and to ensure that any voluntary payment made by the debtor does not extinguish that breathing period or otherwise result in any admission of liability. Given that SB 248 is being challenged at this pre-enforcement stage, where regulations to clarify SB 248 are forthcoming, the Court declines to deploy the "manifestly strong medicine" – typically used "sparingly and only as a last resort" – of declaring the statute facially unconstitutional for vagueness. Bigelow v. Virginia, 421 U.S. 809, 817 (1975) (quoting Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973)).

### B)    FDCPA Preemption

Next, the Court turns to Plaintiffs' FDCPA preemption argument.

The Supremacy Clause of the United States Constitution gives Congress "the power to preempt state law," which may be exercised "either expressly or impliedly." Arizona v. United States, 567 U.S. 387, 399 (2012). Implied preemption comes in two varieties – field preemption, where Congress has determined an area "must be regulated by its exclusive governance," and conflict preemption, where "compliance with both federal and state regulations is a physical impossibility," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. Congress's purpose in enacting a statute serves as "the ultimate touchstone in *every pre-emption case*," and all preemption arguments "must be grounded in the text and structure of the statute at issue." Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008); Kansas v. Garcia, __ U.S. __, 140 S. Ct. 791, 804 (2020) (emphasis added). Plaintiffs bear the burden of proving preemption. See Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1526 n.6 (9th Cir. 1995).

Here, to the extent there is any preemption, the parties appear to agree that the type of preemption at issue is conflict preemption. Plaintiffs contend that SB 248 is preempted by the

FDCPA, because the terms of SB 248 conflict with execution of the FDCPA in several ways.

First, the FDCPA requires a debt collector to send the debtor a notice containing certain information, within five days after the initial communication with the debtor in connection with the collection of any debt (the "Validation Notice"). 15 U.S.C. § 1692g(a). This Validation Notice must include, *inter alia*, the amount of the debt, the name of the creditor to whom the debt is owed, and a statement that the debt is assumed valid unless the debtor disputes the validity of the debt within 30 days of receipt of the notice. 15 U.S.C. § 1692g(a)(1)-(3). Plaintiffs contend that this Validation Notice requirement conflicts with Section 7 of SB 248, which prohibits debt collectors from taking any action to collect a medical debt for 60 days after sending the debtor the certified notice letter. Plaintiffs argue that SB 248's 60-day notice constitutes an "initial communication" within the meaning of 15 U.S.C. § 1692g(a), and thus a collection agency cannot comply with the FDCPA's Validation Notice requirement – including its required statement that the debt is assumed valid if the debtor fails to contest validity within 30 days – without violating SB 248's prohibition on taking further action to collect the debt within the state law's 60-day breathing period. Plaintiffs also note that after a debt collector provides the Validation Notice, the FDCPA permits collection activities and communications to continue under § 1692g(b) – this, they argue, is in direct conflict with SB 248's 60-day moratorium on debt collection.

Second, the FDCPA prohibits a debt collector from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt," including by making a false representation about the "character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(a). Plaintiffs argue that Section 7.5 of SB 248, which requires a collection agency to disclose to the medical debtor that a payment is not demanded or due, despite it being legally owed, could be considered a "false representation" about the "legal status of any debt," in violation of the FDCPA.

Third, the FDCPA contains a "mini-<u>Miranda</u>" warning, which requires a debt collector to disclose in any initial written or oral communication that the debt collector "is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). Plaintiffs argue that the "mini-<u>Miranda</u>" warning conflicts with SB 248 because it directly

1    contradicts Section 7.5's requirement that debt collectors state that the debt "is not demanded or

2    due" when a debtor voluntarily initiates payment with the debt collector.

3      In their supplemental briefing, ECF No. 53, Plaintiffs argue that the recently promulgated

4    Regulation F, 12 C.F.R. § 1006 *et seq.*, proves that a Section 7 notice is an "initial communication"

5    about a "debt" under the FDCPA. They note that 12 C.F.R. § 1006.34(b)(2) defines "initial

6    communication" to mean "the first time that, in connection with the collection of a debt, a debt

7    collector conveys information, directly or indirectly, regarding the debt to the consumer." Plaintiffs

8    contend that, under this broad definition, a Section 7 notice cannot be anything other than an

9    "initial communication," because it constitutes the first time that a debt collection agency "conveys

10   information" to the consumer regarding a debt. Further, because the regulation expressly exempts

11   certain communication from the definition of an initial communication, such as formal pleadings

12   in a civil action, but does not exempt notices like Section 7 notices, Plaintiffs argue that SB 248's

13   Section 7 notice must constitute an "initial communication" for the purposes of the FDCPA.

14   Finally, Plaintiffs emphasize that collection agencies cannot use the CFPB's model Validation

15   Notice – which would confer a safe harbor onto those debt collectors who use it – because the

16   model notice contains several conflicts with SB 248. For example, while the model notice

17   expressly states that the debt collector "is trying to collect a debt," Section 7 of SB 248 prohibits

18   debt collectors from demanding payment. Further, while the model notice gives the debtor a

19   deadline to dispute the debt, SB 248 prohibits the imposition of such a deadline. Plaintiffs contend

20   that these conflicts, along with several others, make it such that debt collectors must abandon the

21   model notice (and its safe harbor) in order to comply with SB 248.

22     Defendant responds that SB 248 is not in conflict with – but rather, is complimentary to –

23   the FDCPA. The linchpin of Defendant's argument is that SB 248 is triggered *before* a collection

24   agency takes *any* action to collect a medical debt, where, by contrast, the FDCPA is triggered *upon*

25   *collection* of a medical debt. Thus, Defendant argues, Section 7 of SB 248 does not prohibit

26   collection agencies from providing the "mini-<u>Miranda</u>" notice, as this notice is required only once

27   an initial communication is taken to induce payment of a medical debt. For the same reason,

28   Section 7.5 is not in conflict with the FDCPA's Validation Notice, 15 U.S.C. § 1692g(a), or the

18

FDCPA's prohibition on false representations, 15 U.S.C. § 1692e(2)(a), as both of those protections under the FDCPA are only triggered once a collection agency begins taking actions to induce payment of a debt. In other words, the FDCPA simply is not applicable during SB 248's 60-day notice period. Defendant contends that any attempt by Plaintiffs to expand the definition of an "initial communication" based on Regulation F is misguided, as Regulation F merely implements the provisions of the FDCPA.

Further, Defendant emphasizes that the FDCPA contains a savings clause that provides that state law is only inconsistent with the FDCPA if it undermines consumer protection. Thus, any state law that affords consumer protection greater than that offered by the FDCPA is expressly *not* preempted by the federal statute. Defendant argues that Plaintiffs fail to explain how SB 248 undermines any consumer protection policy in the FDCPA.

The Court's analysis begins with the presumption against preemption, "rooted in respect for the States as independent sovereigns in our federal system," and the assumption "that Congress does not cavalierly preempt state laws." Tarrant Reg'l Water Dist. v. Hermann, 569 U.S. 614, 631 n.10 (2013). With this presumption in mind, the Court does not find a likelihood of success on the merits with respect to Plaintiffs' FDCPA preemption argument, because it is not impossible to comply with both SB 248 and the FDCPA simultaneously. Id. By the FDCPA's plain language, Altria Grp, 555 U.S. at 76, both the Validation Notice requirement and the "mini-Miranda" requirement are triggered by a communication made "in connection with the collection of any debt." See 15 U.S.C. § 1692g(a); § 1692e(11). The Validation Notice requirement is also specifically triggered five days after the "initial communication," made "in connection with the collection of any debt." Simply put, a Section 7 notice is not a communication made "in connection with the collection of any debt," because Section 7(1) *explicitly states* that the notice must be given 60 days "*before* taking any action to collect a medical debt." (emphasis added). In other words, the Section 7 notice cannot be a communication (initial or otherwise) *made in connection with* debt collection, because Section 7 expressly provides that the notice is made *before* any steps to initiate the debt collection process have occurred.

The issue is not so much with the FDCPA's definition of "initial communication," then, as

19

it is with the phrase "made in connection with the collection of any debt." The Court finds support for this plain language interpretation of the statute in the Ninth Circuit's decision in <u>Hernandez v. Williams</u>, 829 F.3d 1068 (9th Cir. 2016). In <u>Hernandez</u>, the Ninth Circuit addressed the question of whether the phrase "the initial communication," as used in 15 U.S.C. § 1692g(a), refers only to the very first communication sent about a debt, or instead to the first communication sent by each and every debt collector that seeks to collect the debt. 829 F.3d 1068 (9th Cir. 2016). The Ninth Circuit held that "the initial communication" applies to the latter scenario. <u>Id.</u> At 1078. It went on to note that "[v]iewing the text of § 1692g(a) in the context of the FDCPA as a whole makes clear that the validation notice requirement applies to each debt collector *that tries to collect a given debt.*" <u>Id.</u> (emphasis added). This holding and the plain language of the statute, including the statute's allowance for more protective state laws, support this Court's understanding of the FDCPA's validation notice requirement as being triggered by communications made in the course of "tr[ying] to collect a given debt" – not communications that are merely informational, or made for the purposes of giving a consumer breathing room to verify the debt, prior to the actual commencement of collection efforts. Thus, one possible constitutional scenario would be one in which a Section 7 notice is sent to a consumer with all of the information set forth in SB 248, Section 7(1), along with an explicit statement that the collection agency does not intend to take any collection-related action within the 60-day period, and that once the 60-day period passes, the consumer's rights under the FDCPA kick in. Such a notice would comply with both SB 248 and the FDCPA.

The Court further finds that SB 248 does not stand as an obstacle to the accomplishment of Congress's objectives in passing the FDCPA. <u>English</u>, 496 U.S. 72, 78-80 (1990). The FDCPA's declared purpose is to protect consumers from abusive debt collection practices. <u>Hernandez</u>, 829 F.3d at 1078. To that end, the "mini-<u>Miranda</u>" warning seeks to prohibit collection agencies from using "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Under no reasonable interpretation of SB 248 can it be said that the Section 7 notice interferes with this purpose. To the contrary, it bolsters the FDCPA's core goal. The Section 7 notice creates a period within which *no representation* – let

alone a false, deceptive, or misleading representation – can be made to a debtor in connection with the collection of his or her debt. The Court finds that Congress's purpose in enacting the FDCPA is reasonably served by giving medical debtors a period of 60 days to verify or investigate their medical debt, undisturbed by the collection agency's attempts to initiate collections-related contact. <u>Altria Grp.</u>, 555 U.S. at 76.

Plaintiffs contend that Defendant's representation that a Section 7 notice is merely informational and not made in connection with the collection of a debt is belied by Defendant's own behavior. In support of this argument, Plaintiffs produced numerous form letters, approved by the FID, that collections agencies intend to send consumers in order to comply with SB 248. These approved form letters set forth the requirements of SB 248, but also include the FDCPA's mini-<u>Miranda</u> and Validation Notice requirements. For instance, one approved form letter states:

> *This is a notification that [collection agency] will not make any actions to collect this debt within 60 days from the date of this letter. Any payments made toward the debt during this timeframe are considered voluntary and will not void the 60-day notification period described above.* We will take no other action to collect this debt until 60 days from the date of this letter.
>
> . . .
>
> *Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.* If you notify this office in writing within 30 days from receiving this notice, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.
>
> ECF No. 59-2. (emphasis added).

Another approved form letter reads:

> Your medical debt with [creditor], for the service dates listed below, has been assigned to [collection agency] for collections.
>
> *Please be advised that this is not a demand for payment nor is one due at this time. This is a notification that Healthcare Collections-I, LLC will not make any actions to collect this debt, and the debt will not be reported to a credit reporting agency,*

21

*within 60 days from the date of this letter.* Any payments made toward the debt during this timeframe are considered voluntary and will not void the 60 day notification period described above.

*Federal law requires the following notice: This correspondence is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose.*

Id. (emphasis added).

Plaintiffs argue that by approving these form letters, Defendant has effectively conceded that a Section 7 notice is an "initial communication," made "in connection with the collection of [a] debt," thus triggering the FDCPA's Validation Notice and "mini-Miranda" requirements. Plaintiffs further contend that these form letters create confusion for the consumer.

The Court rejects Plaintiffs' reliance on these letters for a few reasons. First, the Court notes that this is a pre-enforcement facial challenge to the statute, rather than an as-applied challenge. Plaintiffs' repeated reliance upon hypothetical enforcement scenarios and reference to unfinalized regulations or forms cannot serve as a basis upon which to invalidate the law at this juncture. See Chicanos Por La Causa, Inc. v. Napolitano, 558 F.3d 856, 866 (9th Cir. 2009) (stating that a "speculative, hypothetical possibility does not provide an adequate basis to sustain a facial challenge").

Additionally, the Court finds that Plaintiffs' reliance on these form letters is inappropriate as there is no indication that these form letters have been sent to any debtors in connection with the execution or enforcement of SB 248, and they were offered as drafts before the current proposed regulations were introduced. The proposed draft regulation, issued August 24, 2021, explicitly states that that Section 7 "is not intended to be a communication under the Fair Debt Collection Practices Act." ECF No. 40-1. All of the approved form letters in the record predate August 24, 2021. The Court also notes that it has received no indication from the parties that the process for promulgating regulations has yet concluded. Thus, it cannot be said – based on the unsent form letters alone – that it is impossible to simultaneously comply with SB 248 and the FDCPA.

The Court also agrees with Defendant that SB 248 seeks to provide greater consumer protections, above and beyond the floor established by the FDCPA. As such, the FDCPA's savings clause is triggered, such that SB 248 can be construed to coexist with the federal law. The FDCPA's savings clause states, in pertinent part:

> This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. *For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.*

15 U.S.C. § 1692n (emphasis added).

At the July 27 hearing, Plaintiffs' counsel argued that SB 248's 60-day notice could undermine consumer protections in two ways. First, to the extent there are any late fees accruing on the debt, extending payment by 60 days would only increase the debtor's late fees. Second, to the extent the creditor itself furnishes information regarding the debt to credit reporting agencies, the 60-day notice could interfere with the consumer's ability to dispute the debt. Plaintiffs' counsel also argued that the 60-day breathing period could make it difficult for consumers to receive answers from collection agencies regarding their debt.

The Court finds these arguments to be wholly speculative. Extending the time within which a collection agency may begin to collect a medical debt would not artificially increase the amount of late fees due on the debt; it would merely provide consumers with advanced notice of debt collection, and create a period in which the debt collector could not act as it otherwise would to initiate collection of the debt. A consumer is still free to begin making voluntary payments on the debt within the 60-day period, and to prevent the accrual of further late fees. See SB 248, Section 7.5(1) ("Nothing in section 7 of this Act shall prohibit a collection agency from accepting a voluntary payment from a medical debtor during the 60-day notification period . . . . ."). Further, there is nothing in the text of SB 248 to suggest that collection agencies may not answer debtors' questions regarding their underlying debt. Section 7.5, which sets forth certain parameters should

23

a debtor initiate the payment process with a collection agency, merely imposes affirmative disclosure requirements on collection agencies, such as the duty to disclose that payment is not demanded or due, and the duty to disclose that the debt will not be reported to any CRA in the 60-day breathing period. Id. SB 248, by its terms, does not prohibit collection agencies from answering debtors' questions in good faith, nor does it seek to harm consumers by barring such communication.

### C)   FCRA Preemption

The Court next addresses Plaintiffs' FCRA preemption argument.

Congress enacted the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Gorman v. Wolpoff & Abramson, LLP, 552 F.3d 1008, 1013 (9th Cir. 2009) (quotations and citations omitted). To those ends, the FCRA seeks to make "consumer reporting agencies ["CRAs"] exercise their grave responsibilities . . . with fairness, impartiality, and a respect for the consumer's right to privacy." Id. (quoting 15 U.S.C. § 1681(a)(4)). In realizing that goal, FCRA "imposes some duties on the sources that provide credit information to CRAs, called 'furnishers' in the statute." Id. Common "furnishers" of information include "credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies." Id. at n.7 (quoting H.R. Rep. No. 108-263, at 24 (2003)).

Section 1681s-2 of FCRA imposes two categories of responsibilities on the furnishers of information. Id. at 1014. The first category, set forth at subsection (a), covers the furnisher's duty to "provide accurate information" to the CRA, by, *inter alia*: reporting knowledge of errors; correcting and updating consumer information; providing notice of any dispute about the accuracy of information furnished to the CRA; providing notice of voluntary closure of an account by the consumer; providing notice of the delinquency of consumer accounts within 90 days of furnishing the information; creating procedures to respond to notices from CRAs relating to identity theft; and providing notice to the consumer of the furnishing of negative information to a CRA, within 30 days of the furnishing of a negative report. 15 U.S.C. § 1681s-2(a)(1)-(7).

24

The second category, set forth at subsection (b), includes various duties which are triggered only "upon notice of a dispute" – "that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information." Gorman, 552 F.3d at 1014. Under subsection (b), once a CRA notifies the furnisher that a consumer has lodged a dispute about the completeness or accuracy of information furnished to the CRA, the furnisher is required to investigate the dispute, as well as to take certain actions if an item of information is found to be inaccurate, incomplete, or unverifiable after investigation. 15 U.S.C. § 1681s-2(b)(1).

FCRA expressly preempts state laws that attempt to cover the subject matter regulated by § 1681s-2(a) and (b). See § 1681t(b)(1)(F). The relevant preemption clause states that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter under section 623 [15 U.S.C. § 1681s-2], relating to the responsibilities of persons who furnish information to consumer reporting agencies." Id.

Plaintiffs argue that the preemption clause at § 1681t(b)(1)(F) expressly preempts SB 248, because SB 248 restricts the furnishing of information to CRAs. Plaintiffs contend that FCRA creates a comprehensive statutory scheme that imposes specific duties on the furnishers of information to CRAs, which is disrupted by SB 248. Plaintiffs argue that SB 248's 60-day freeze prevents information from being "furnished in a timely manner to consumer reporting agencies," thereby interfering with the ability of potential lenders and creditors to see the true status of a borrower's credit history. Defendant responds that FCRA does not preempt SB 248, because while § 1681s-2 imposes certain duties upon furnishers to provide accurate information, it does not require that this duty be completed within any particular time period. Because it is possible for furnishers' duties under § 1681s-2(a) and (b) to take hold *after* SB 248's 60-day notice period has passed, Defendant argues that § 1681t(b)(1)(F) of FCRA does not preempt SB 248.

The Court finds that § 1681t(b)(1)(F) does not preempt SB 248. Beginning with the language of the preemption statute, Altria Grp., 555 U.S. at 76, it is clear that to the extent § 1681t(b)(1)(F) preempts state laws dealing with "the responsibilities of persons who furnish information to consumer reporting agencies," it expressly does so only in relation to the very specific subject matter enumerated in 15 U.S.C. § 1681s-2. See § 1681t(b)(1)(F) (stating that "no

requirement or prohibition may be imposed under state law *with respect to any subject matter under . . . 15 U.S.C. § 1681s-2*" (emphasis added)). As noted above, § 1681s-2 sets forth certain requirements related to a furnisher's duty to accurately report credit information, and to investigate any dispute about the accuracy of credit information reported to the CRA.

The Court agrees with Defendant that nothing in FCRA requires that the above-listed duties be completed during the 60-day notice period created by SB 248. FCRA does not impose a standard time period for credit reporting (as Plaintiffs themselves conceded at oral argument), let alone require that a medical debt be furnished to CRAs within Section 7's 60-day breathing period. § 1681s-2 – which is the only section of FCRA that speaks to the responsibilities of furnishers – requires only that once consumer information *is* furnished, the furnisher take certain steps to ensure the information's ongoing accuracy. Simply put, the timing of the *furnishing itself* is not an issue that § 1681s-2 of FCRA is concerned with. If Congress wanted to impose time requirements within which a furnisher must communicate a debt to a CRA, it could have done so. Such time requirements exist elsewhere in FCRA. See, e.g., 15 U.S.C. § 1681c(a)(4) (prohibiting CRAs from issuing consumer reports containing accounts placed for collection which precede the report by more than 7 years); 15 U.S.C. § 1681s-2(a)(7) (requiring furnishers to provide notice to the consumer of the furnishing of negative information to a CRA within 30 days of the furnishing of a negative report). Because Congress did not create a requirement that furnishers communicate a debt to a CRA within any particular period of time, despite having imposed time limits elsewhere in the law, the Court will not read FCRA to be in conflict with SB 248's 60-day notice. See Robinson v. Shell Oil Co., 519 U.S. 337, 341-42 (1997) (declining to read a temporal qualifier into the statute where Congress could have so specified, but did not).

To the extent Plaintiffs contend that creditors will be prejudiced by a collection agency's inability to furnish information to CRAs for 60 days, this is merely a hypothetical concern. First of all, Plaintiffs have not represented to the Court that collection agencies typically furnish information about a medical debt to CRAs within 60 days of making initial contact with the debtor. Napolitano, 558 F.3d at 866. Even in the absence of SB 248, there is no evidence that a collection agency will furnish information about a medical debt to a CRA within 60 days of initial contact,

as FCRA simply does not impose any such time requirement. Furthermore, the Court emphasizes that SB 248 only imposes a brief moratorium on when a *collection agency* may report a debt to a CRA – it does *not* restrict the lender (e.g. the hospital or medical provider) itself from furnishing the debtor's information to a CRA. SB 248 does not stand in the way of a lender's ability to report a debt. Because SB 248 does not "relat[e] to the responsibilities of persons who furnish information to [CRAs]," as specifically defined by 15 U.S.C. § 1681s-2, the Court cannot find that it was the "clear and manifest purpose of Congress" for FCRA to preempt SB 248 under § 1681t(b)(1)(F). Am. Bankers Ass'n v. Gould, 412 F.3d 1081, 1086 (9th Cir. 2005).

The cases cited by Plaintiffs in support of their FCRA preemption argument are both non-binding and distinguishable. First, Plaintiffs rely on Roybal v. Equifax, in which the district court for the Eastern District of California held that Plaintiffs' state law claims were preempted by FCRA because FCRA "precludes all state statutory or common law causes of action that would impose any 'requirement or prohibition' on the furnishers of credit." 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2005). While this language appears to sweep broadly, it does not pertain to the issue at hand. Plaintiffs in Roybal alleged that their credit reports "contained grossly inaccurate credit information," and that the debt collectors furnishing the information to CRAs failed to take ameliorative action, despite Plaintiffs' numerous attempts to alert them to the errors. Id. at 1178. In determining that Plaintiffs' state law claims were preempted by FCRA, the district court observed that Plaintiffs' claims were "based on alleged injury *arising purely from the reporting of credit information by a furnisher of credit*." Id. (emphasis added). Here, by contrast, Plaintiffs do not challenge any erroneous "reporting of credit information by a furnisher of credit"; instead, they challenge just the opposite – SB 248's temporary *freeze* on the reporting of credit information.

Nor is the Court bound or persuaded by Consumer Data Industries, Association v. Frey, 495 F. Supp. 3d 10 (D. Maine 2020). In Frey, the district court for the District of Maine held that FCRA preempted a state law which prohibited a CRA from publishing medical debt on a consumer report for at least 180 days from the date of the first delinquency on the debt. 495 F. Supp. 3d at 20-21. In so holding, the Frey court focused on 15 U.S.C. § 1681t(b)(1)(E), which expressly preempts state law that touches on subject matter regulated under 15 U.S.C. § 1681c, "relating to

information contained in consumer reports." § 1681c regulates the information that a CRA may include in a consumer report. It does not regulate the behavior of collection agencies, like Plaintiffs in this case, that are the furnishers of information *to* CRAs. And reciprocally, nothing in SB 248 speaks to the information that a CRA may include in a consumer report; SB 248 is only concerned with imposing a temporary breathing period within which furnishers cannot provide information to CRAs. In short, Plaintiffs' attempt to liken the 180-day freeze in <u>Frey</u> to the Section 7 notice is misguided, because the Maine law was concerned with the behavior of CRAs, and thus covered by § 1681c, whereas SB 248 is concerned with the actions of collection agencies and licensed debt collectors, which do not come within the ambit of § 1681c. While the <u>Frey</u> court determined that FCRA preempts any temporary freezes on the actions of CRAs, it said nothing about whether FCRA preempts temporary freezes on the actions of collection agencies.

D)    <u>First Amendment</u>

Finally, the Court finds that Plaintiffs are unlikely to succeed on the merits of their First Amendment claim.

Plaintiffs allege that SB 248 constitutes a prior restraint on constitutionally protected speech because it places a temporary freeze on Plaintiffs' ability to communicate with medical debtors and CRAs. Plaintiffs assert that this restriction is a content-based restriction, subject to strict scrutiny, because it applies to particular speech, based on the topic discussed or the idea or message expressed.

Defendant responds that the 60-day notice provision does not target speech, but instead is consistent with a state's power to regulate the economic activity of debt collection. Defendant characterizes the 60-day freeze on communication as a restriction directed towards non-expressive economic activity, that carries with it only an incidental burden on speech. Defendant emphasizes that the 60-day notice is not a ban on communication, as nothing in Section 7 of SB 248 prohibits the debtor and the collection agency from (1) conversing regarding voluntary payments; or (2) conversing regarding errors that should be corrected. Instead, Defendant argues, the Section 7 notice is designed only to regulate the economic activity of debt collection. Even if Section 7 could

28

be classified as speech regulation, Defendant argues, it is purely of private concern, because it is commercial speech solely related to the economic interests of collection agencies. Thus, if the Section 7 notice is construed to regulate speech, it should only trigger intermediate scrutiny, as it would only regulate commercial speech.

First, the Court finds that SB 248 regulates speech. While SB 248 pertains to "action[s] to collect a medical debt," such actions plainly include efforts to communicate with debtors. The Court further finds, however, that the speech regulated is commercial speech, as it relates solely to the economic interests of debt collection agencies and their audience. Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, 425 U.S. 748, 762 (1976). When determining whether the state has met its burden to justify a commercial speech regulation, courts evaluate: (1) whether the speech concerns lawful activity and is not misleading, (2) whether the asserted governmental interest justifying the regulation is substantial; (3) whether the regulation directly advances the governmental interest asserted; and (4) whether the regulation is more extensive than necessary to serve that interest." Central Hudson Gas & Elec. Corp., 447 U.S. 557, 566 (1980); see also Retail Digital Network, LLC v. Prieto, 861 F.3d 839, 841-42 (9th Cir. 2017) (reaffirming the Central Hudson test for commercial speech restrictions).

Applying the Central Hudson test, the Court finds that Plaintiffs are unlikely to succeed on the merits of their First Amendment claim. Regarding the first factor, there is no dispute that collection agencies may lawfully contact a medical debtor regarding his or her debt. There is also little question that Nevada has a substantial interest in protecting its citizens from the financial ruin that may accompany crushing medical debt. Regarding the third factor – whether the regulation directly advances the governmental interest asserted – the Court finds that SB 248 advances the substantial governmental interest in easing Nevadans' medical debt obligations and their attendant negative consequences by creating a breathing period for consumers to verify and challenge their debt. Finally, the Court finds that SB 24s8 is narrowly tailored to achieve that goal, as it creates only a brief carveout of time within which debt collectors may not initiate efforts to collect a debt, and the disclosure requirements imposed by Section 7.5 are neither onerous nor in conflict with federal law. In sum, SB 248 survives scrutiny under Central Hudson, and is not an unconstitutional

prior restraint on speech.

## II.  Risk of Irreparable Harm

The Court next briefly addresses the second <u>Winter</u> factor – the likelihood that Plaintiffs will suffer irreparable harm in the absence of preliminary relief.

Plaintiffs argue that they face irreparable harm because SB 248 deprives them of their constitutional rights and forces them to choose between complying with state and federal law, thereby exposing them to financial liability. One of the Plaintiffs, PlusFour, Inc., alleges that it is on the brink of permanent closure, because it cannot engage in any medical debt collection in the state of Nevada due to the law's vagueness and its conflict with the FDCPA and the FCRA. Plaintiffs also allege that the medical debt collection industry in Nevada, writ large, has "ground to a halt because of S.B. 248."

Defendant responds that Plaintiffs have not shown a risk of irreparable harm, because economic harm is not irreparable harm for the purposes of imposing a TRO or PI. Defendant adds that Plaintiffs' allegations of permanent business closure and industry collapse are conclusory and unsupported by any evidence.

The Court finds that Plaintiffs have not met their burden to prove a risk of irreparable harm. As discussed above, the Court finds Plaintiffs unlikely to succeed on the claim that they have suffered constitutional violations. Further, loss of revenue or monetary harm in the form of damages is not sufficient to establish irreparable harm. <u>Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.</u>, 762 F.2d 1374, 1376 (9th Cir. 1985). While irreparable harm may be established by the threat of being driven out of business, Plaintiffs must do more than present affidavits containing conclusory allegations to demonstrate that the threat is actual and concrete. <u>See</u> <u>Am. Passage</u>, 750 F.2d at 1473-74; <u>see also</u> <u>Keywords, LLC. v. Internet Shopping Enters.</u>, No. 05-cv-2488-MMM, 2005 U.S. Dist. LEXIS 51464, at *33 (C.D. Cal. June 29, 2005) (collecting cases and stating that Plaintiff's "conclusory assertion that defendants' conduct will drive it out of business does not adequately establish irreparable injury"). Plaintiffs have failed to meet that burden here. Myers' affidavit represents that based on his understanding, every member of his association has laid off

or "not hired additional employees" due to the "industry-wide standstill in medical debt collection." These statements, standing alone, lack sufficient evidentiary support. Further, while Bennett's affidavit states that PlusFour has had to lay off its staff, there is no indication in the record that PlusFour has been threatened with suit under either the FDCPA or SB 248. That PlusFour has elected to preemptively cease debt collection and to lay of its staff is not sufficient evidence upon which to base a finding of irreparable harm.

### *III. Balance of the Equities and Public Interest*

The Court further finds that the balance of the equities and the public interest – the third and fourth <u>Winter</u> factors – tip in Defendant's favor.

Plaintiffs allege that SB 248 imposes substantial hardship. They contend that the conflicts between SB 248 and federal law place them "at risk of terminal regulatory discipline under NRS Chapter 649" and civil liability under the FDCPA. Further, Plaintiffs argue that under NRS § 649.435, they may be subject to criminal penalties if they choose to follow federal law instead of SB 248. Plaintiffs contend that the public interest is served by enjoining the enforcement of an unconstitutional law, and by enjoining preempted provisions of state law.

Defendant responds that Plaintiffs mischaracterize the law and offer no evidence that any of their feared outcomes are likely to occur. Defendant acknowledges that collection agencies can suffer criminal penalties for violating Chapter 649, but notes that the Ninth Circuit presumes state criminal statutes carry a scienter requirement; because Plaintiffs would not meet the *mens rea* requirement, they are in no danger of being subject to criminal prosecution. Further, Defendant argues that Plaintiffs have not balanced their purported interests with the public's overwhelming interest in protecting the large numbers of Nevadans who struggle with medical debt.

The Court finds that both the balance of the equities and the public interest favor Defendant. Because the Court finds Plaintiffs unlikely to succeed on the merits of their preemption claims, it does not agree with Plaintiffs that there is any risk of civil or criminal liability, as Plaintiffs can comply with SB 248 and federal law simultaneously. Further, the Court finds that there is a substantial public interest in permitting the state Legislature to respond to the medical debt crisis

in the context of the COVID-19 pandemic, and to pass lasting consumer protections for debtors in the state of Nevada.

Plaintiffs' Motion for Temporary Restraining Order and Motion for Preliminary Injunction [ECF Nos. 4, 5] are accordingly DENIED.

### VI.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike [ECF No. 43] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Amend/Correct Complaint [ECF No. 52] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to Supplement and Amend Application for Temporary Restraining Order and Motion for Preliminary Injunction [ECF No. 53] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Motion for Preliminary Injunction [ECF Nos. 4, 5] are **DENIED**.

**DATED: February 7, 2022**

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**